# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

EPHRAIM KIRKPATRICK,

                Plaintiff,

v.

NEVADA DEPARTMENT OF CORRECTIONS, et. al.,

                Defendant.

3:17-cv-00204-MMD-CBC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]

Plaintiff Ephraim Kirkpatrick ("Plaintiff") filed the instant lawsuit against Defendants the Nevada Department of Corrections and Harold Wickham. (Collectively referred to as "Defendants") pursuant to the American with Disabilities Act ("ADA"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 26.) Plaintiff did not file an opposition and no reply was filed. Having thoroughly reviewed the record and motions, the Court recommends Defendants' motion for summary judgment be granted.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff was an inmate in the custody of the Nevada Department of Corrections ("NDOC") until his release in 2019. The events giving rise to this lawsuit arose between 2014 and 2017 while Plaintiff was incarcerated at the Warm Springs Correctional Center ("WSCC") in Carson City, Nevada. Proceeding *pro se*, Plaintiff filed the instant case pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C.§ 1213, against the

---

[1] This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

NDOC, the NDOC Offender Management Division, and Harold Wickham seeking injunctive relief and monetary damages. The complaint was received by the court, along with Plaintiff's motion to proceed *in forma pauperis*, on April 3, 2017. (ECF No. 1.)  Pursuant to 28 U.S.C. § 1915A(a), the Court screened Plaintiff's complaint on May 2, 2018, and determined that Plaintiff's ADA claim could proceed.  (ECF No. 15.)

### B. Factual Background

The facts of this case are simple. Plaintiff asserts that staring in 2014 and continuing through 2017, Defendants failed to give him good time and work time credits that he was entitled to while he was incarcerated at WSCC.  (ECF No. 16 at 3.) Plaintiff claims he was unable to work due to his disabilities. As a result, Defendants allegedly added six days to Plaintiff's sentence for every month he did not have work – amounting to 72 additional days on his sentence for each year he could not work. (*Id.*)

### C. NDOC Grievance Procedure

Prior filing a civil lawsuit, inmates must exhaust all available administrative remedies through the grievance process established by the NDOC. Administrative Regulation ("AR") 740 governs the grievance process at NDOC institutions. (ECF No. 26-1). It provides for a three-step grievance process. The first step requires the inmate to file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims."  (*Id.* at 2.) If the inmate fails to submit the informal grievance within this period "shall constitute abandonment of the inmate's claim at this, and all subsequent levels." (*Id.* at 6.)   NDOC staff is required to respond within forty-five days.  (*Id.* at 7.)

If the inmate is dissatisfied with the informal response, he or she must file a First Level within five days, which in effect is an appeal of the informal grievance.  (*Id.* at 8.)  At the first level, the inmate must "provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional

relevant documentation." (*Id.* at 7.) The grievance is reviewed by an official of a higher level, who has forty-five days to respond. (*Id.* at 8.)

Finally, if the inmate is dissatisfied with the First Level response, the inmate may appeal to the second level within 5 days, which is subject to still-higher review. (*Id.*) Officials are to respond to a second-level grievance within sixty days from the date the grievance is received by the grievance counselor, specifying the decision and the reasons the decision was reached. (*Id.*) Once an inmate receives a response to the second-level grievance, he or she is considered to have exhausted available administrative remedies and may pursue civil rights litigation in federal court.

D.  Plaintiff's Grievance

Plaintiff filed an informal grievance asserting his allegations that he was discriminated by the NDOC based on his disabilities on December 2, 2016. (ECF No. 36-1 at 8) (corrected image of ECF No. 26, Ex. 2). This grievance was assigned Grievance No. 2006-30-22342. (*Id.*) This grievance was denied at both the informal and First Levels pursuant to AR 740. (*Id*). On March 15, 2017, Plaintiff filed a Second Level grievance for Grievance No. 2003-30-22342. (ECF No. 26-3 at 002). Based on AR 740, the NDOC had 60 days from the date the grievance was received by the grievance counselor. (ECF No. 26-1 at 8). The Second Level grievance was received by the grievance counselor on March 23, 2017. Therefore, the NDOC had until May 22, 2017 to provide a response. Ultimately, the Second Level Grievance was denied by a response by the NDOC on August 31, 2017. (ECF No. 26-3 at 001).

C.  Motion for Summary Judgment

On October 30, 2018, Defendants filed the instant motion for summary judgment arguing Plaintiff's claims should be dismissed on the following three grounds: (1) Plaintiff failed to properly exhaust his administrative remedies prior to filing this lawsuit; (2) the claims in this case are barred by *Heck v. Humphrey*; and, (3) the claims are barred by the statute of limitations. (ECF No. 26).

To date, plaintiff has failed to file an opposition and no reply was filed.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the

light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III.    DISCUSSION**

  A.    Failure to Exhaust

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before

allowing the initiation of a federal case.  In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Exhaustion is mandatory. *Id.* at 524–25. The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90).  Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91. In addition, § 1997e(a) requires exhaustion before the filing of a complaint and that a prisoner does not comply with this requirement by exhausting available remedies during the course of the litigation. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002)

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56.  If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170.  However, failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007).  The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

The evidence is undisputed that Plaintiff filed Grievance No. 2006-30-22342 regarding his allegations that he was being discriminated against based on his disabilities, which was denied at both the informal and First Levels pursuant to AR 740. (ECF No. 36). On March 15, 2017, Plaintiff filed a Second Level grievance for Grievance No. 2006-30-22342. (ECF No. 26-3). Therefore, based on AR 740, the NDOC had 60 days from the date the grievance is received by a grievance counselor to respond. (ECF No. 26-1 at 8). The Second Level grievance was received by the grievance counselor on March 23, 2017. (ECF No. 26-3). Therefore, the NDOC had until May 22, 2017 to provide a response.

Here, Plaintiff filed the instant case on April 3, 2017 – only six days after the grievance counselor received the Second Level Grievance. As a result, Plaintiff's administrative remedies were not yet fully exhausted at the time he filed the instant complaint. Therefore, the court finds that Plaintiff failed to exhaust his administrative remedies pursuant to AR 740 prior to initiating this action. On this basis alone, the motion for summary judgment should be granted.[2]

B.      Failure to Oppose

This court's local rules specifically state that, "the failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for -attorney's fees, constitutes a consent to the granting of the motion." LR 7-2(d).

After reviewing the documents on file and the docket in this case, the court finds Defendants' motion for summary judgment should also be granted due to Plaintiff's failure to file an opposition or other responsive document. Plaintiff was on notice of his obligation to file a responsive to document to Defendants' motion pursuant to the court's order advising him of his obligations pursuant to *Klingele v. Eikenberry* and *Rand v. Rowland*. (ECF No. 28). When Plaintiff filed to file any opposition,  the court – *sua sponte* – provided Plaintiff an

---

[2]      This issue is dispositive on the merits of all issues presented in the motion for summary judgment. Accordingly, the court does not reach Defendant's separate arguments seeking dismissal under *Heck v. Humphrey* or due to the statute of limitations.

extension of time to file an opposition up to and including Friday, February 1, 2019. (ECF No. 31). Plaintiff again failed to file any opposition or responsive document. The court construes Plaintiff's repeated failures to file an opposition or responsive document to constitute his consent that Defendants' motion should be granted. LR 7-2(d).

## V.  CONCLUSION

Based on the foregoing, the court recommends that Defendants' motion for summary judgment (ECF No. 26) be granted.  The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 26) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that judgment be entered and this case be closed.

**DATED:** May 10, 2019.

_____
UNITED STATES MAGISTRATE JUDGE